UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

JANICE M. FUSELIER                    DOCKET NO. 6:09-cv-0265

VERSUS                                JUDGE MELANÇON

MICHAEL ASTRUE,                       MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

Janice Fuselier was born on May 9, 1950.[1]  She graduated from high school[2]

and trained at a vocational school to become a licensed practical nurse.[3]  She worked

in hospitals and nursing homes and as a private duty nurse.[4]  Her work experience

---

[1]     Record at 80, 1064.

[2]     Record at 95, 1065.

[3]     Record at 95, 1065.

[4]     Record at 95, 1071-1073.

qualified her, under the Social Security regulations, as insured through September 30, 1986.[5]

On February 14, 1996, Mrs. Fuselier applied for a period of disability and for disability insurance benefits[6] under Title II of the Social Security Act.  Therefore, any disability for which benefits are sought must be established as having existed before that date.[7]  Mrs. Fuselier alleges a disability onset date of November 30, 1982.[8]  That date coincides with the date on which she was admitted to Lafayette General Hospital and diagnosed with severe bilateral pneumonia.[9]  At the time of the alleged onset, Mrs. Fuselier was 32 years old, and she was 36 years old on her date last insured. Although it is unclear from the face of the application,[10] it appears that Mrs. Fuselier originally claimed that her disabilities included chronic obstructive pulmonary disease ("COPD"), diabetes, and mental problems.[11]

---

[5]     Record at 84.

[6]     Record at 79-82.

[7]     See, e.g., *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990); *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

[8]     Record at 80.

[9]     Record at 127-131.

[10]     Record at 79-82.

[11]     Record at 46.

On May 17, 1996, her claim was denied.  In denying the claim, the regional commissioner of the Social Security Administration wrote:  "You said that you became disabled on 11/30/82 because of COPD, diabetes and mental problems.  The medical evidence in file is insufficient to fully evaluate your overall condition prior to 09/30/86.  We have determined your condition was not disabling on any date through 09/30/86, when you were last insured for disability benefits."[12]

Mrs. Fuselier requested reconsideration of that ruling, and, on June 12, 1996, the prior ruling was affirmed.[13]

Mrs. Fuselier passed away on November 30, 1997,[14] and her husband continued her quest for disability benefits.[15]

A hearing was held on April 9, 1998, which resulted in an unfavorable decision dated August 17, 1999.[16]  There, it was stated that Mrs. Fuselier claimed to be disabled because of "chronic obstructive pulmonary disease, diabetes, agoraphobia, depression[,] and abnormal liver function studies."[17]

---

[12]     Record at 46.

[13]     Record at 44-45.

[14]     Record at 90, 256-258.

[15]     Record at 66.

[16]     Record at 386-393.

[17]     Record at 389.

On October 14, 1999, Mr. Fuselier asked the Appeals Council to review the unfavorable decision.[18]  Because the audiotape of the 1998 hearing could not be located, however, the Appeals Council remanded the matter to an administrative law judge ("ALJ") for another hearing.[19]  The second hearing was held on May 3, 2005, and another unfavorable decision was rendered on July 15, 2005.[20]  The decision stated that Mrs. Fuselier claimed to have become disabled on November 30, 1982 "due to COPD, diabetes, and depression with agoraphobia."[21]  The ALJ found that she was not disabled at any time through the date last insured, September 30, 1986.[22]

On August 1, 2005, Mr. Fuselier requested review by the Appeals Council.[23] The Appeals Council denied the request for review on July 5, 2007.[24]

Before that date, however, Mr. Fuselier passed away.  The Fuseliers' children, Jacinda and John, Jr., continued to pursue their mother's claim,[25] and, on September

---

[18]     Record at 401.

[19]     Record at 398-400.

[20]     Record at 28-39.

[21]     Record at 32.

[22]     Record at 32, 38.

[23]     Record at 25.

[24]     Record at 7-9.

[25]     The undersigned has been unable to located a document in the record in which Mr. and Mrs. Fuselier's children request or are granted permission to continue their mother's claim.

4, 2007, they filed suit in this Court under Docket No. 07-cv-1470.[26]   In that proceeding, the Commissioner moved to have the ALJ's July 15, 2005 decision reversed and remanded because the ALJ based his decision on medical and vocational expert testimony that was not in the record.[27]  The claimants consented, and judgment was entered on May 21, 2008, reversing the ALJ's decision and remanding the matter for further administrative action.[28]

On October 6, 2008, the Appeals Council assumed jurisdiction over this matter,[29] and on January 26, 2009, it affirmed the ALJ's unfavorable decision of July 15, 2005,[30] finding that "[t]he claimant is not disabled as defined in the Social Security Act at any time through September 30, 1986, the date she was last insured for benefits."[31]  This lawsuit was then filed on February 18, 2009.[32]

---

[26]     Rec. Doc. 1 in Docket No. 6:07-cv-1470.  None of the documents filed in that lawsuit are included in the transcript of the entire record relating to this case.  However, the undersigned has reviewed the suit record.

[27]     Rec. Doc. 7 in Docket No. 6:07-cv-1470.

[28]     Rec. Doc. 9 in Docket No. 6:07-cv-1470.

[29]     Record at 1095-1096.

[30]     Record at 1089-1094.

[31]     Record at 1094.

[32]     Rec. Doc. 1.

## ASSIGNMENT OF ERRORS

The claimants contend that the Commissioner erred in failing to find Mrs. Fuselier disabled prior to the date she was last insured.[33]  They argue that the unfavorable decision is not supported by substantial evidence because Mrs. Fuselier's pulmonary impairment combined with her obesity support a finding of disability.[34]

## THE STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining (a) whether the decision was supported by substantial evidence and (b) whether the proper legal standards were applied in reaching that decision.[35]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[36]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere

---

[33]     Mrs. Fuselier's children previously contested the Appeals Council's assumption of jurisdiction over this matter, but they have now conceded that "the Appeals Council properly assumed jurisdiction of Ms. Fuselier's claim after this Honorable Court remanded her claim pursuant to the request of the Commissioner." Rec. Doc. 9 at 1.

[34]     Rec. Doc. 9 at 3-4.

[35]     *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[36]     *Patterson v. Astrue*, 324 Fed. App'x 419, 421 )5th Cir. 2009); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

-6-

scintilla and less than a preponderance.[37]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[38]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[39]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[40]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[41]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[37]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[38]     *Boyd v. Apfel,* 239 F.3d at 704.

[39]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[40]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[41]     *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[42]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[43]

The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled, which requires evaluation of the following factors:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in the Social Security regulations; (4) whether the impairment prevents the claimant from performing past relevant work (i.e., whether the claimant can return to his prior job); and (5) whether the impairment prevents the claimant from doing any other work.[44]

The claimant bears the burden of proof on the first four steps; at the fifth step, the Commissioner bears the burden of showing that the claimant can perform other

---

[42]     42 U.S.C. § 423(d)(1)(A).

[43]     20 C.F.R. § 404.1572(a)-(b).

[44]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

substantial work in the national economy.[45]  If the Commissioner makes the necessary showing at Step Five, the burden shifts back to the claimant to rebut this finding.[46]

If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[47]  If the Commissioner cannot make a determination at any step, he goes on to the next step.[48]

In this case, the Appeals Council adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable."[49]  The Appeals Council also adopted the ALJ's "findings or conclusions regarding whether the claimant is disabled."[50]  The Appeals Council also set forth its own findings, which it expressly stated are based on a review of the entire record.[51]

---

[45]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[46]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[47]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[48]     *Perez v. Barnhart*, 415 F.3d at 461; 20 C.F.R. § 404.1520(a)(4).

[49]     Record at 1092.

[50]     Record at 1092.

[51]     Record at 1093.

The Appeals Council determined, at Step One, that Mrs. Fuselier did not engage in substantial gainful activity after the alleged onset date of November 30, 1982.[52]  This finding is supported by the evidence contained in the record.[53]

At Step Two, the Appeals Council determined that Mrs. Fuselier had the following severe impairments:  obesity and moderately severe COPD.[54]  This is also supported by the evidence contained in the record.[55]

Although various claims were made over the course of the long history of this matter concerning the conditions that allegedly caused Mrs. Fuselier to be disabled, only obesity and COPD are relevant to the time period for which benefits were sought.  Mrs. Fuselier originally claimed that her disabilities included COPD, diabetes, and mental problems.[56]  A disability report that she filled out on February 23, 1996, asked:  "What is your disabling condition?"  She responded by listing the following conditions:  COPD, diabetes, agoraphobia, and depression.[57]  On that same form, she stated that her disabling conditions first bothered her on November 30,

---

[52]     Record at 1093.

[53]     Record at 99.

[54]     Record at 1093.

[55]     Record at 132, 173, 218, 381, 383-384.

[56]     Record at 46.

[57]     Record at 91.

-10-

1982 but did not prevent her from working until March 21, 1992.[58] A "Work Activity Report" signed by Mrs. Fuselier on March 1, 1996, states that she worked for brief periods of time in three years after the alleged onset of her disability.  This form shows that Mrs. Fuselier worked from March 10, 1987 until April 2, 1987, and that she left that position because the case was over.  The form also shows that Mrs. Fuselier worked from February 15, 1988 until July 15, 1988 and that she left that position because she left town.  Finally, the form shows that she worked from January 5, 1992 until March 21, 1992.  It is only with regard to this final period of employment that she indicated that she stopped working because of her alleged disability.[59]  Thus, the information provided to the Social Security Administration by Mrs. Fuselier raises some doubt concerning the onset date of her alleged disability.

Furthermore, Mrs. Fuselier was not diagnosed with diabetes before 1995,[60] and the record's first mention of mental problems correlates with a suicide attempt in 1987.[61]  Thus, the record contains no evidence supporting the contention that Mrs.

---

[58]     Record at 91.

[59]     Record at 99.

[60]     Record at 181, 1052.

[61]     Record at 176.

Fuselier was disabled due to diabetes or mental problems during the time period between 1982 and 1986.

The unfavorable decision of 1999 stated that Mrs. Fuselier claimed to be disabled because of "chronic obstructive pulmonary disease, diabetes, agoraphobia, depression[,] and abnormal liver function studies."[62]   In fact, however, as noted above, she was not diagnosed with diabetes before 1995.[63]   Records from Acadiana Mental Health, dated November 22, 1995, indicate that she was diagnosed with diabetes in November 1995.[64]   A report prepared by Dr. Kenneth A. Ritter, Jr., an internist, on May 1, 1996, noted that she had been diagnosed with diabetes "recently."[65]   Therefore, there is no basis for concluding that she was disabled due to diabetes between 1982 and 1986.

Mrs. Fuselier's medical records also contain no reference to agoraphobia prior to 1995,[66] and her medical records contain no reference to depression before 1987.[67] On March 27, 1987, after the relevant time period elapsed, Mrs. Fuselier was

---

[62]     Record at 389.

[63]     Record at 181, 1052.

[64]     Record at 181.

[65]     Record at 211.

[66]     Record at 181, 184.

[67]     Record at 176.

-12-

admitted to the emergency room after having lacerated both wrists in a failed suicide attempt.[68]  At that time, she was diagnosed with suicidal depression.[69]  In November 1995, she sought counseling from Acadiana Mental Health Center, based on symptoms of anxiety and agoraphobia that she had allegedly been having for the past five years, or commencing in approximately 1990.[70]  The earlier suicide attempt was noted.[71]  She was diagnosed with major depression, agoraphobia, and panic attacks.[72]  In 1996, Dr. James Fontenot of Acadiana Mental Health Center treated her for major depression and panic disorder with agoraphobia.[73]   The evidence supports the conclusion that the mental health problems for which she was treated commenced after her date last insured and long after the alleged onset date of her disability. Consequently, there is no basis on which to conclude that Mrs. Fuselier was disabled due to depression, anxiety, agoraphobia, or any other mental condition during the relevant time period of 1982 to 1986.

---

[68]     Record at 176.

[69]     Record at 176.

[70]     Record at 181.

[71]     Record at 181, 1052.

[72]     Record at 183, 184, 1052.

[73]     Record at 1058-1059.

-13-

Mrs. Fuselier's medical records do not mention liver studies until 1996.[74] According to Mrs. Fuselier's "Disability Report" of February 23, 1996, the liver studies were performed by Dr. Donald Reed.[75]   According to a statement Mrs. Fuselier made to the Social Security Administration, she was diagnosed with hepatitis-C by her family physician, Dr. Reed, and the diagnosis was confirmed in a second opinion by Dr. Jacque Noel.[76]  The record indicates that her first consultation with Dr. Reed was in October 1994,[77] and the record's references to Dr. Noel do not begin until 1996.[78]  This was many years after the alleged onset of disability and also long after the date last insured.  Consequently, there is no evidentiary basis on which to conclude that she was disabled due to liver problems during the critical time period from 1982 to 1986.

The 2005 unfavorable decision states that Mrs. Fuselier claims to be disabled "due to COPD, diabetes, and depression with agoraphobia."[79]  Again, however, the record contains no evidence of Mrs. Fuselier having diabetes, depression, or

---

[74]     Record at 94, 192, 193.

[75]     Record at 94, 192, 193.

[76]     Record at 125.

[77]     Record at 189.

[78]     Record at 200-210.

[79]     Record at 32.

agoraphobia during the relevant time period of 1982 to 1986.   Therefore, those conditions cannot form the basis of a compensable disability.

This leaves only COPD and obesity as the conditions by which Mrs. Fuselier might have been disabled between 1982 and 1986.  As noted previously, the Appeals Council found, at Step Two of the disability analysis, that Mrs. Fuselier had two severe impairments, obesity and moderately severe COPD.  At Step Three of the analysis, however, the Appeals Council found that Mrs. Fuselier did not have an impairment, or a combination of impairments, that meet or medically equal a listed impairment.  Both of these findings are supported by substantial evidence.

Mrs. Fuselier had the burden of proving that those conditions caused her to be disabled, as that term is defined in the Social Security regulations, and she also had the burden of proving that she became disabled on or before the date last insured. "The Social Security Act places the burden of establishing disability on the claimant."[80]  A claimant must show that she was disabled on or before the last day of

---

[80]     *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), citing *Turner v. Califano*, 563 F.2d 669, 670 (5th Cir. 1977).  See, also, *Fraga v. Bowen*, 810 F.2d at 1301.

her insured status.[81]   A claimant who becomes disabled after the expiration of her insured status is not entitled to benefits.[82]

In this case, however, the evidence in the record demonstrates that the claimant's burden has not been satisfied.  Although the claimants proved that Mrs. Fuselier had COPD and obesity during the relevant time period, they did not prove that either of those impairments, individually or in combination, was severe enough to satisfy a listing.

Mrs. Fuselier claims a disability onset date of November 30, 1982.  On that date, she was admitted to Lafayette General Hospital suffering with acute bilateral pneumonia.  She was discharged from the hospital about three weeks later, on December 20, 1982, after her condition resolved through the use of antibiotics.[83]  In March 1983, Dr. Philip Perret reported on his consultation with Mrs. Fuselier.  His conclusions were that she had acute bilateral pneumonia, chronic asthmatic bronchitis, and obesity.[84]  She may also have had pulmonary emboli, which resolved

---

[81]     *Ware v. Schweiker*, 651 F.2d at 411, citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

[82]     *Ivy v. Sullivan*, 898 F.2d at 1048, citing *Milam v. Bowen*, 782 F.2d 12184, 1286 (5th Cir. 1986).

[83]     Record at 127-130.

[84]     Record at 132-133.

with coumadin treatment.[85]  A Doppler venous profile performed on December 13, 1982 showed a normal patent deep venous system.[86]  On December 14, 1983, a chest x-ray revealed a normal-sized heart and a complete clearing of previous lung infiltration, with no present evidence of pulmonary or pleural pathology.[87]   On January 7, 1983, another chest x-ray also showed that Mrs. Fuselier had a normal-sized heart and clear lungs.  Thus, her pneumonia was successfully treated.

On February 18, 1983, she was diagnosed with "moderate restrictive lung disease," and the record indicates that she had a moderate decrease in diffusing capacity at that time.[88]  X-rays from a few days later, on February 21, 1983, indicate that her lungs were then clear.[89]

On May 3, 1983, the records again indicate that Mrs. Fuselier had a mild restrictive impairment with a moderate reduction of diffusing capacity,[90] but Dr.

---

[85]     Record at 127-133.

[86]     Record at 993.

[87]     Record at 888.

[88]     Record at 381.

[89]     Record at 329.

[90]     Record at 383-384.

Perret also noted that her chest was clear, and she had a "slowly resolving respiratory distress syndrome."[91]

From September 26 through September 30, 1983, Mrs. Fuselier was hospitalized and treated for severe bronchitis.[92]  In his discharge summary, Dr. Albert Corne noted that the medicine regimen prescribed during her hospitalization was successful and that "she cleared almost immediately."[93]

Medical records from the relevant time period show that Mrs. Fuselier, who was approximately 5' 4" or 5' 5",[94] was obese.  When she was admitted to the hospital on November 30, 1982, she weighed 190 pounds.[95]  On September 26, 1983, she weighed 204 pounds.[96]  In 1983 and in 1985, her doctors noted that she was obese.[97]  She underwent a gastric stapling procedure in 1985 in an effort to lose weight.[98]  Although the records related to that procedure are not included in the record, Dr.

---

[91]     Record at 254.

[92]     Record at 522.

[93]     Record at 1005.

[94]     Record at 212, 915, 1017, 1065.

[95]     Record at 915.

[96]     Record at 1017.

[97]     Record at 132, 172-173.

[98]     Record at 136,

-18-

Corne's note of October 7, 1985 describes the procedure as "recent... in March of this year."[99]  By October 1985, she had lost 45 pounds.[100]  She continued to lose weight for approximately one year after she had the surgery, and then began regaining it.[101]  In 1996, when she applied for benefits, Mrs. Fuselier weighed between 280[102] and 288[103] pounds.  At the hearing, Mr. Fuselier was asked about Mrs. Fuselier's weight, and he testified that it approached 300 pounds and that she was big everywhere.[104]

Although the record does not include evidence that Mrs. Fuselier weighed that much at any point during the relevant time period, the record establishes that Mrs. Fuselier was obese and did have recurrent pulmonary problems during the relevant time period.  The record does not establish, however, that these conditions – alone or in combination – satisfied a listing or placed limitations on Mrs. Fuselier to the extent that she was unable to work.

---

[99]     Record at 172.

[100]    Record at 172.

[101]    Record at 1065, 1082.

[102]    Record at 218.

[103]    Record at 98, 185, 1065.

[104]    Record at 1065, 1069.

At the 2005 hearing, Mr. Fuselier was asked to focus his responses on the time period around 1986,[105] but it is not clear that he actually did so.  Additionally, he testified that he and his wife separated in 1980 and lived apart until approximately 1986, when she returned to his home and resided there until her death in 1997.[106] Consequently, he was not able to provide a great deal of information concerning the relevant time period.[107]  He also testified that, during the entire time frame after she moved back into his home, she was unable to take a bath on her own,[108] clean house, or cook.[109]  But this is inconsistent with Mrs. Fuselier's representations, in a letter she wrote to the Social Security Administration on May 25, 1996, in which she stated that she was still doing cooking and laundry at that time (sixteen years after the alleged onset of her disability and almost ten years after her last date insured) albeit at her own pace.[110]  She also stated that she got out of breath taking a bath, but did not mention that she required assistance when bathing.[111]  Therefore, Mr. Fuselier's

---

[105]   Record at 1064.

[106]   Record at 1066-1067, 1073.

[107]   Record at 1073.

[108]   Record at 1068, 1069.

[109]   Record at 1069-1070.

[110]   Record at 53.

[111]   Record at 52.

testimony regarding the restrictions on his wife's activities from 1982 to 1986, due to her obesity and her pulmonary illness, are not wholly credible.

There are no medical records from the relevant time period in which any physician imposes functional limitations on Mrs. Fuselier because of her impairments.  The medical expert who reviewed Mrs. Fuselier's medical records at the hearing, however, testified that Mrs. Fuselier had "innumerable pulmonary function studies" and "none of them... ever met or equalled" a listing.[112]  The ALJ and the Appeals Council were entitled to rely on the medical expert's opinion.  Again, although the record contains numerous medical records from multiple physicians who saw Mrs. Fuselier during and after the time period for which benefits are sought, there are no studies, analyses, evaluations, or opinions concluding that her pulmonary illness, her obesity, or the combination of those two conditions meets or equals the severity of a listed impairment.  Mrs. Fuselier did not return to work for several years after she had pneumonia in 1982,[113] but "[a] claimant cannot choose to limit her activities and claim that this proves disability when there is no medical necessity for the limitations."[114]

---

[112]     Record at 1078-1079.

[113]     Record at 103.

[114]     *Pena v. Massanari*, 2001 WL 912665, 5 (N.D. Tex. 2001), quoting *Shelton v. Chater*, 87 .3d 992, 996 (8th Cir. 1996).

At Step Three of the disability analysis, "the burden of proof rests with a claimant.  Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing."[115]  To satisfy the burden, the claimant must provide medical signs and laboratory findings that support all of the criteria for a listing.[116]  If the claimant fails to do so, the court must conclude that substantial evidence supports the Commissioner's finding that the required impairments for the listing are not present.[117]

Under Listing 3.02(A) for COPD, a certain level of pulmonary insufficiency must be established.  For a person of Mrs. Fuselier's height, the $FEV_1$ must be equal to or less than 1.25 to meet the listing and equate to a disability.  No such laboratory results are included in Mrs. Fuselier's medical records for the relevant time period.  In 1983, her $FEV_1$ was 2.15,[118] and even in 1996 her $FEV_1$ was 1.59.[119]  The plaintiff's diagnostic studies simply do not support a finding of disability at Step Three because of her pulmonary illness.

---

[115]     *Dell-Wilkerson v. AStrue*, 2010 WL 931884, 5 (N.D. Tex. 2010), citing *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.1990).  See, also, 20 C.F.R. § 404.1520(d)

[116]     *McCuller v. Barnhart*, 72 Fed. App's 155, 158 (5th Cir. 2003); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[117]     *Selders v. Sullivan*, 914 F.2d at 620.

[118]     Record at 383.

[119]     Record at 253.

There is no listing specifically for obesity,[120] but it is considered a severe impairment "when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."[121]  Although the record establishes that, at the end of her life, Mrs. Fuselier was unable to do much more than sit on the sofa due to the combination of her depression, agoraphobia, obesity, and COPD, the record does not contain evidence establishing the effect that her obesity had on her in the 1982 to 1986 time period.  During that time period, Mrs. Fuselier underwent gastric stapling surgery and lost weight.  There is no evidence that, during the critical time, her weight was in the 280 to 288 range as it was in 1996 and later.  Furthermore, there is no credible evidence in the record demonstrating that, during the critical time, Mrs. Fuselier's obesity significantly limited her ability to do basic work activities.

In summary, the claimants have failed to prove that, in the relevant time period from 1982 to 1986, Mrs. Fuselier's obesity and COPD – either alone or in combination – met or equalled a listing.  This ends the analysis.  As stated in the Social Security Regulations, "[i]f we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next

---

[120]     SSR 02-1P.

[121]     SSR 02-1P.

step."[122]  Because the claimants did not prove that Mrs. Fuselier had an impairment, or a combination of impairments, that met or equalled the severity of a listed impairment, they did not prove that she was disabled.  Although the Commissioner has a duty to fully develop the facts, the claimant has the burden of proving her disability.[123]  In this case, that simply was not done.  The Appeals Council's finding of no disability was grounded upon sound legal principles and substantial evidence. For those reasons, the undersigned recommends that the decision be affirmed.

## CONCLUSION AND RECOMMENDATION

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

---

[122]     20 C.F.R. § 404.1520(a)(4).  See, also, *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[123]     *Leggett v. Chater*, 67 F.3d at 566; *Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir. 1989); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

-24-

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of August, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)